(Huron Co., O., Court of Common Pleas.)

SAMUEL L. HARVEY, doing business under the name of Fairfield Plow Works, v. P. LAMOUREAUX, O. O. OLNEY and W. P. CHAPIN.

———

(1). A geographical name is not ordinarily the subject of a trade mark; but its use as a designation of manufactured goods, will, under some circumtances, when such use tends to defraud others, be enjoined.

(2). The use of a geographical name as a designation of manufactured goods, will be enjoined as against a person not residing in the locality named, or manufacturing his goods there, if his purpose in the use of the name is to mislead and defraud.

(3). An action for such injunction will lie in favor of a person residing ·in such locality and manufacturing like goods there under the same name, where he has used the name as the designation of his goods for so long a time that its use has grown to be understood in the market as designating the goods manufactured by him, and where such use is a source of profit.

———

WILDMAN, J.

The case of Samuel L. Harvey v. H. P. Lamoureaux and others presents an interesting question. The plaintiff, Samuel L. Harvey, in his amended petition alleges "that he is now, and through the last ten years has been, engaged in the business of manufacturing agricultural plows, at the township of Fairfield, in the county of Huron and state of Ohio; that he is now the sole owner of, and during all that time has used, as trade marks of his said business, the words, 'Fairfield Plow', and 'New Fairfield Plow', and neither have said defendants, nor has either of them, any right or interest whatever therein.

"Before, and during all that time, said trade marks were not, nor was either of them, used apart from the plaintiff, nor is either of them now used by any other manufacturer or dealer, at said Fairfield or any other place, except the attempt of the defendants to unlawfully appropriate the same, hereinafter set forth.

"The plows so manufactured by the plaintiff, have been sold by him, his agents and vendees, extensively through the states of Ohio, Michigan, Indiana and·in other parts of the country, during the said ten years; and are now being largely made and marketed by him. Said plows so made and sold by him, under his said trade-marks, have acquired a high reputation by reason of their excellence, and have been through the said ten years, and now are, the source of great profit to him, being known to the public and to the buyers thereof by their said names and trade-marks of 'Fairfield Plow' and 'New Fairfield Plow!'

"The defendants well knowing the localities in which plaintiff had created a demand for his manufactures, well knowing the premines, but willfully disregarding the plaintiff's rights therein, have been, and now are, making and preparing to make, at Shelby, Richland county, Ohio, and are offering for sale, plows in imitation of the plaintiff's said manufactures, so similar in style and appearance thereto as to mislead and deceive plain-

[COPYRIGHT, 1898, BY CARL G. JAHN.]

tiffs customers and the public generally, which they are advertising and publishing for sale under the name and with the pretended trade-mark of 'New Fairfield Plow', and are endeavoring to engage the agents of the plaintiff to sell them, and by all means in their power to obtain a market for their said imitation, with the purpose and result of enabling said defendants to pass the same off on the public and divers purchasers, as plows manufactured by the plaintiff.

"Said imitation is calculated to deceive, and does deceive, the purchasers, dealers in, and users of, the plows so made by the plaintiff and the public; and is now inducing divers persons to contract for the defendants' said product, so marketed and advertised as the 'New Fairfield Plow' by them, in the belief that they were made by the plaintiff, greatly to the diminution and loss of his said business and profits.. By his continuous and rightful use of said trade-marks through ten years, they had become identified with the source of their manufacture, and this effort of the defendants to put upon the markets their own products under the name 'New Fairfield Plow', is an artifice and deception on the public, and infringement of the plaintiff's trade-marks, and has been a great injury to him in his business operations, to the damage of the plaintiff five hundred dollars."

The plaintiff further alleges that at a certain date he requested the defendants to desist from their said infringement of his said trade-marks, but that they refused to do so, and on the contrary, avowed their purpose to continue, and that they are about to, and will, unless restrained by the court, continue to infringe on the plaintiff's rights, and he prays for a temporary retraining order, enjoining the defendants from the further use of his said trade-marks, "Fairfield Plow" and "New Fairfield Plor", and each of them, in their manufacture, advertisement and sale of plows made by or for them and in all their business therein; that on final hearing, a perpetual injunction may be granted with judgment against them for said five hundred dollars damages and the costs. and that the plaintiff may have general relief.

The demurrer to this amended petition is general: "That it does not state facts sufficient to constitute a cause of action." The question principally raised in argument is, that the plaintiff has no right to the exclusive use of a geographical name as a trade-mark; that the name "Fairfield" is a geograpical name to which the plaintiff has no exclusive right. Numerous authorities have been cited to the court. I will not attempt to review all of them in passing upon this demurrer, but because of its interesting nature, I will call attention to the language of some decisions which I deem especially pertinent to the argument which has been made.

Counsel for defendants, in his argument in behalf of the demurrer, cites the text of the 26 Encyclopedia of Law, pages 327 to 329, and the note on page 329, and the various authorities which are referred to in said note. Referring first, to page 327, where the text writer is treating of trade-marks, we have the sub-title, "Geographical Terms. a. General rule in the United States. It must be considered as settled in the United States that no one can apply the name of a district or country to an article of commerce, and thereby acquire such an exclusive right to the application as to prevent others inhabiting the district or dealing in similar articles coming from the district from truthfully using the same designation. The nature of geographical names is such that they cannot point to the right (personal origin) or ownership of the articles of trade to which they are applied. They point only to the place of production, not to the producer, and could they be appropriated exclusively, their appropriation would result in mischievious monopolies. Many of the older cases held that a resident of a locality had rights in the name of the same which would entitle him to enjoin any person not residing from using it to his injury, and for the purpose, or with the danger, of deceiving the public. But these cases are considerably weakened by a recent decision wherein the general doctrine is laid down that before a claimant to a trade-mark can enjoin another using the same without his license, he must show that either he or others joined with him in the suit, or who could be joined with him, have an exclusive right to employ the particular trade-mark for the particular purpose, and that this state of facts can never exist in the case of a geographical term which represents such a district or place that others might with equal right establish a similar business at the same place, and designate their goods truthfully as emanating from that particular place."

A glance at the foot-note to which reference is made by the text writer to ascertain the recent decision to which he refers. reveals the fact that he is citing the Cement Company case in the 44 Federal Reporter at page 277. He first refers, it is true, in support of the text, in his note, to the case of Delaware etc. Canal Co. v. Clark, 13 Wallace, 327; but that is by no means a recent case, nor does it tend in the direction of holding the legal views expressed in the text to which reference is made, as embodied in the "recent decision". The case in the 44 Federal Reporter is manifestly the one to which reference is made. It holds: 'A suit to restrain the use of the name 'Rosendale Cement' in the denomination of cement manufactured and sold by defendants, cannot be maintained, though such name

is knwon by the public to mean cement made in Rosendale, and defendants' manufactory is in another state, unless it be shown that complainants have an exclusive ownership or property therein. It is not sufficient that they in common with certain other persons, have a right to use it, and the public may be deceived by defendants' use of the name.''

This case was decided in the circuit court of Eastern Pennsylavnia, in 1890. The statement of facts discloses this: "The complainants manufacture cement in the town of Rosendale, in the state of New York, where there are extensive quarries of cement rock, which are worked by some fifteen or twenty different parties.''

We might, in passing, distinguish this reported case from the one which we have at bar. In the case at bar it is said that no other persons have used these particular names during all the time that they have been used by the plaintiff. It is said that they are not used by any other manufacturer or dealer outside of Fairfield or any other place except as the defendant has attempted unlawfully to appropriate the same.

In this reported case, the statement of facts continues: "Some of these Rosendale quarries have been worked for over half a century, but the complainants commenced their operations about 1874. The cement made in Rosendale and its vicinity has always been called "Rosendale Cement.''

It is to be noted that it is not stated that the cement made by the complainants has always been called "Rosendale Cement," so as to justify them in any claim of the exclusive right to the use of the name; but it is said that all the cement manufactured in Rosendale and its vicinity has been known by that name. This is a distinction from the case as presented by this petition. It is true, this petition we have here, does not say that other plows are not manufactured in Fairfield; but it does say that no other plow was ever manufactured in Fairfield known and advertised by the name which has been adopted or used by the plaintiff here.

In the statement of facts in the 44 Federal Reporter case, it is further said that, "The complainants contend that the term has acquired a generic signification, applicable to the hydraulic cement manufactured at Rosendale and its vicinity, and inhering in the marketable quality of the cements manufactured by the complainants and others. The bill was filed for the purpose of enjoining the defendants from using the word 'Rosendale' in describing their cement, and to obtain damages and an account of profits for such use.''

The claim of the plaintiff was that they, in common with other people, had a right to use the name "Rosendale," as describ-

ing the cement which came from the Rosendale Quarries, and that persons producing the same cement from another locality, had no right to use the name.

Judge Bradley, after reciting these facts, says:—"They" (the complainants,) "do not pretend that they have an exclusive right to the use of the term 'Rosendale'. since it is equally used by the other manufacturers of cement in the town, some of whom have establishments of much longer standing than that of the complainants; but they insist that they have a right to use it, and to participate in the advantages which are attached to it as enhancing the marketable value of their cement. The defendants contend that the name 'Rosendale Cement' has ceased to have a mere local significance or application, and has come to be a mere generic term, used to designate the common grade or class of cements otherwise known as American natural cements, to distinguish them from a higher grade or class of cements known as 'Portland Cement'; this general class of cement being by force of accident called 'Rousendale Cement' because it was first made in Rosendale.''

The court, then, considering the question as to whether one person can maintain a suit for injunction to restrain another from using a name, when other persons have just as much right to the use of the name as the complainant, say; —"The question still remains whether they can be prosecuted therefor, at the suit of a private party, who is only one of the many who manufacture cement at Rosendale, and truly denominate their cement, "Rosendale Cement"

It is held substantially in this case that he cannot do it; that where the right is public, one person is not entitled to prosecute it. He must have some special benefit that is being infringed upon, or interfered with,—some special right before he can prosecute an action to enjoin such infringement or interference.

There is a case in the 51 New York Reports at page 159, reported in the 10 American Reports at page 588, which takes issue with this position, I think. It is the case of Newman et al, v. Alvord et al. The syllabus reads:—"Plaintiffs and their predecessors had, for many years, been engaged in manufacturing water lime cement from quarries near Akron, Erie county, which was labeled and sold as 'Akron Cement,' to which they had given a reputation in the market, and the defendants, knowing of such use by the plaintiffs of the word 'Akron' as a trademark, and for the purpose of availing themselves of the reputation the plaintiffs' cement had acquired, applied the word 'Akron' to designate a similar cement made by them at a quarry near Syracuse. Held, that the plaintiffs were entitled, as against the defendants, to protection in the exclusive use of the

word 'Akron,' by injunction to restrain the use of it by the defendants."

In deciding the case, Judge Earl says:—"The cements manufactured by the plaintiffs were made from stone taken from certain quarries located in the town of Newstead, in Erie county, near the village of Akron. While they did not own all the quarries, and there were others, therefore, who could manufacture the same kind of cement, it does not appear that any one else was engaged, at the time of the commencement of this suit, in manufacturing cement from these stones, or in selling any cement · manufactured from them, as Akron Cement. They, and those to whom they succeeded, had for many years been engaged in manufacturing this cement and selling the same as Akron Cement, and it was known in market by that name."

Judge Earl further says:—"Hence, it cannot be doubted that the plaintiffs are entitled to the relief which they demand, if they have the right as against the defendants to the exclusive use of the word "Akron," as their trade-mark. The question is not therefor before us, and it is not necessary for us to determine, whether any other owner of a portion of the same quarries could not manufacture cement and label it Akron cement. The sole question to be determined is whether the plaintiffs, who were the only persons engaged in manufacturing and selling the real Akron Cement, which is known and has a reputation in market as such, can be protected in the use of the word "Akron' against the defendants, who used it to defraud the plaintiffs and deceive the public."

Now, we have both these elements embodied in the case at bar,—the averments that there was no other manufacturer of plows using the name "New Fairfield Plow," or Fairfield Plow," at the time of the beginning of this suit, and that the defendants were about to manufacture plows at Shelby for the very purpose of misleading the public and thereby getting away the plaintiff's trade.

Judge Earl says:—"It is objected that the plaintiffs could not adopt the name of a place as a trade-mark; a trade-mark is properly defined by Upton (Upton's Trade Marks, 9) as 'the name, symbol, figure, letter, form or device adopted and used by a manufacturer or merchant, in order to designate the goods that he manufactures or sells, and distinguish them from those manufactured or sold by another, to the end that they may be known in the market as his, and thus enable him to secure such profits as result from a reputation for superior skill, industry or enterprise.' The trade-mark must be used to indicate not the quality, but the origin or ownership of the article to which it is attached. It may be any sign, mark, symbol, word, or words, which others have not an equal right to employ for the same

purpose. I can perceive no reason why it may not be the name of a place. Suppose one owns the only coal mine situated in a town or near a city, and he names his coal after the town or city, and it becomes known as such in the market, why may not such name become his trademark? The same could not be truly applied to coal obtained from any other place."

Omitting much of this reasoning, Judge Earl says:—"I can, therefore, see no reason why the plaintiffs could not adopt and use the word "Akron' as their trademark, simply because it was the name of a place. But it is further claimed that the plaintiffs cannot be protected in this trade-mark, because it had been used by others who had made cement from the same quarries. I will assume (although it is not necessary to decide the point in this case) that other persons, who owned quarries at or near Akron, had the right also to call their cement Akron cement; and yet it is quite clear that the plaintiffs, upon the facts in this case, are entitled to protection against the defendants. It is sometimes said, in the cases to which our attention has been called, that the claimant of a trade-mark must have the exclusive right to it. This form of expression, I apprehend, is not strictly accurate. The right must be exclusive as against the defendant. It is generally sufficient, in such cases, if the plaintiff has the right and the defendant has not the right to use it. The principle upon which the relief is granted is that the defendant shall not be permitted, by the adoption of a trade-mark which is untrue and deceptive, to sell his own goods as the goods of the plaintiff, thus injuring the plaintiff and defrauding the public. Here the plaintiffs had given a reputation to the Akron cement in market.

"They had always been its principal manufacturers and sellers, and, at the time of the commencement of the suit, were the sole parties who could be injured by the fraudulent use of the trade-mark by the defendants, and, hence they are clearly entitled to the protection which they seek."

Several authorities are cited, and in one case, Lord Justice Gifford says:—"I quite agree that the plaintiffs have no property in the name; but the principles, upon which the cases on this subject proceed, is, not that there is property in the word, but that it is a fraud upon a person who has established a trade and carries it on under a given name, that some other person should assume the same name, or the same name with a slight alteration, in such a way as to induce persons to deal with him in the belief that they are dealing with the person who has given a reputation to the name."

This is in line with the reasoning of some later cases in which it is held that while a geographical name is not proper-

ly a trade name, still the use of it may be enjoined, where it is designed or calculated to work a fraud.

Judge Earl calls attention to a case decided in the supreme court of the United States which he says is not yet reported, entitled, The President, Managers and Company of the Delaware and Hudson Canal Company v. Clark.

He says,—"In that case, the plaintiffs claimed the word, 'Lackawanna', as applied to coal, as their trade-mark, and sought to restrain the defendant from the use of the same word, as applied to his coal. It appeared that the coal of both parties came from mines located in a region of country called the 'Lackawanna Valley,' and that it did not differ in its nature or quality. It also appeared that the coal taken from that region was and had been known in the trade as Lackawanna coal, and that the defendant did not use the word Lackawanna to induce the public to believe that his coal was the plaintiff's, or in any way to deceive the public or defraud the plaintiffs. It was a case where the defendant could truthfully and honestly designate and sell his coal as Lackawanna coal, and, hence. it was held that he in no way invaded any right of the plaintiffs. It might have been an authority here if the defendants had manufactured their cement from stone taken from the Akron quarries, and could thus honestly and truthfully have designated their cement as Akron cement. It is not an authority or the broad rule claimed by the learned counsel for the appellant, that the name of a place can never be appropriated as a trade-mark. That the name of a place can thus be appropriated, has, during the present year, been decided on appeal in the house of lords in the case of Wotherspoon v. Currie reported in 5 House of Lords."

A case in the 82 Federal Reporter, page 816, is also cited by counsel, —the case of Pillsbury-Washburn Flour Mills Co. et al, v. Eagle, decided by the circuit court of the northern district of Illinois, October 13,1897. In that case it was held: —"A number of competing millers in Minneapolis, Minn. who make flour by the roller process, and each of whom uses his peculiar marks in connection with the word, 'Minneapolis, Minn.'; and some of whom also mark their packages, 'Minnesota Patent.' have no such joint or separate right in these words as will enable them to maintain a joint bill, in behalf of themselves and others similarly situated, to enjoin a grocer from selling flour made in Wisconsin, and branded with his own name, in connection with the words 'Best Minnesota Patent', Minneapolis, Minn".

This case is one in which several persons joined to prosecute an action, seeking to restrain a person living in another locality from using the name "Minneapolis" in designation of his flour, and it was held that they could not so join. Judge Showalter says:—"The idea seems to be that defendant sells to persons who, but for his false representation, might buy flour made by some one or other of these complainants. But which one? The false representation has no definite relation to any individual.

"There is a good deal more reasoning in the same line upon which I might comment at great length, were it not that this case is reversed in its entirety by a case in the 86 Federal Reporter. decided by the circuit court of appeals for the Northern District of Illinois, at page 608. The Court of appeals hold as follows:—"While a geographical name is not the subject of a trade-mark, and any one may use it, yet where it has been adopted. first, as merely indicating the place of manufacture, and afterwards has become a well known sign and synonym for superior excellence, persons residing at other places will not be permitted to use it as a brand or label for similar goods for the purpose of appropriating the good will and business of another."

The question as to whether or not such resident plaintiffs could join is not raised here, but is proper to be considered in view of the claim made by the defendant, that the right to the use of the name "Fairfield" is not exclusive in the plaintiff, but other persons manufacturing plows in Fairfield might use the name.

The circuit court of appeals cites a very large number of authorities in the discussion of the question of the use of such geographical names as trade-marks. There is a larger number of authorities cited in this case than in any other case to which my attention has been called. They say: "Where the question is simply one of unfair competition, it is not essential that there should be any exclusive or proprietary right in the words or labels used, in order to maintain an action. This principle is announced in a case in the 163 United States, page 169, as in this case, that, 'irrespective of any question of trade-marks, rival manufacturers have no right, by imitative devices, to beguile the public into buying their wares under the impression they are buying those of their rivals.'"

Referring again to the 26 Encyclopedia of Law, page 330, the note cites the case of Evans v. Von Lear, 32 Federal Reporter, 163, in which the judge says:— "In the absence of fraud, the complainants cannot enjoin the defendant from the use of a geographical name. The fact that such use by another person may cause the public to make a mistake as to the origin or ownership of the product, can make no difference. if it is true in its application to the goods of one as to the other. Purchasers may be mistaken, but they are not deceived by false representation, and equity will not enjoin against

telling the truth. It is manifest then, that to entitle the complainants to any of the relief sought by this bill, some fraud must be proved."

Another case is cited from the 24 Federal Reporter 149. in which Judge Wallace says:—"Although the complainant cannot have an exclusive property in the words 'St. Louis' as a trade-mark, or an exclusive right to designate its beer by the name 'St. Louis Lager Beer,' yet, as its beer has always been made at that city, its use of the designation upon its lables is entirely legitimate; and if the defendant is diverting complainant's trade by any practices designed to mislead its customers, whether these acts consist in as simulating its labels, or representing in any other way his products as those of the complainant, the latter is entitled to protection."

In the petition in the case at bar, the plaintiff is not only alleging a fraudulent purpose, but that in the consummation of that purpose, the defendant is visiting the agents of the plaintiff for the purpose of getting the trade away from the plaintiff and inducing them to believe that the goods which the defendants are manufacturing and selling, are those of the plaintiff.

At page 334, of the 26 Encyclopedia of Law, this language is found in the text: "In the United States, under a recent decision (in referring again to the case in the 44 Federal Reporter, upon which the writer seems to place great reliance), "it is doubtful whether a resident of a town or district may monopolize the name thereof as a trade-mark to any extent, as against a non-resident, than as against a resident; but the case referred to is one in which the geographical term employed indicated local origin, character or quality merely."

In other words, it does not indicate he person who manufactured it. The plaintiff here alleges expressly that it had grown to indicate a particular plow manufactured by this plaintiff; that the plow had acquired a reputation, and that this name had been known and applied to the plow made by him.

The text writer says, (26 Encyc. of Law.) —"But the English cases, and some of the older American cases, hold, that where a geographical name, although indicating, and used for the purpose of indicating the local origin of manufactured goods, had, in consequence of the fact that a single manufacturer had, for years, been the only person to manufacture a certain class of goods at the particular place, and had used the name thereof as his trade-mark, come to indicate to the public that the goods upon which such name appeared were of the manufacture of a particular person or factory, such term had by use assumed a secondary meaning, which, when it was applied to those particular goods, caused it to indi-

cate clearly to the minds of the public both ownnership and origin, and the first user of the name would be held to have acquired a property in the word, which, while it will not be sufficient to prevent all other residents of the same origin from using the same upon their goods of the same class, to truthfully indicate their place of manufacture, will still require that the geographical term shall be so used by others, as not to be a trademark, and to avoid the danger of having the goods of others sold as and for those of the man who had first used the name as a trade-mark and given reputation and value to it."

The Encyclopedia here does not cite any authorities under the latter part of this paragraph, but he cites numerous cases under what he calls "English cases", and also some of the older American cases.

I think an examination will show that not only the older cases, but the very late cases sustain, if not the equitable rule that a geographical name may be used and treated as a trade-mark, as against a person not living in the locality who attempts to use it, still that if a person has acquired a reputation for his goods in using that name, and another person, or a person in another locality is using it with the purpose and effect of perpetrating a fraud upon the manufacturer and user of the name in his locality, the courts will enjoin such fraud. It would be difficult to enjoin a mere intent and permit acts which are claimed to be fraudulent to go on; in other words, it would be impossible for the court to enforce an order that defendant may continue to use the name "New Fairfield Plow" in application to its plow manufactured at Shelby; but that it must abandon its fraudulent purpose; the purpose is coupled with the acts.

The plaintiff here says that defendant is doing certain acts and is doing them with fraudulent intent and effect. The court cannot reach the mind and intention of the person who, it is alleged, is doing unlawful acts, but the court can stop unlawful acts and punish the person who is doing them, and that is all the court has power to do.

This 86 Federal Reporter is not one of the older cases as cited by the text writer in the 26 Encyclopedia of Law; on the contrary, it is quite a late case. It was decided by the circuit court of appeals of the 7th, circuit of this present year, April 5, 1898, so that in the enunciation of the doctrine here expressed by the court, coming after the publication of this Encyclopedia of Law, of course, it is a decision as to which the text writer could have had, at the time, no knowledge, because it did not exist.

The 39 Federal Reporter, 92, was cited by counsel for defendant, but I think it is against him as applied to the case

which we have here. The 19 American Reports, page 278, was cited. This was the case of The Glen and Hall Manufacturing Company v. Hall. This case, I think, tends in the direction of favoring the plaintiff's claim rather than in over-throwing it:—"Where one has established a business at a particular place, from which he has or may derive profit, and has attached to such business a name in dicating to the public where it is carried on,—e. g., 'No. 10 South Water Street', he thereby acquires property in the name, which will be protected from invasion by a court of equity on principles analogous to those applicable in case of the invasion of a trade-mark."

I will not stop to read the case, although there are several passages in it to one or two of which I might make reference to show the distinction that is made here between the trade-mark, technically so called, and the right to use the name analagous to a good-will, where a certain reputation has been acquired by the excellent quality of goods.

Judge Dwight says, in the 19 American Report, 280:—"The case at bar, properly considered, is a species of 'good will,' analogous to a trade-mark. Browne on Trade-Marks, sections 96-100. In Churton v. Douglas 1 Johns. (Eng.) 188, V. C. Wood (Lord Hatherley) explains with care the meaning of the term 'good will.' It does not mean simply the advantage of occupying particular premises which h ve been occupied by a manufacturer, etc. It means every advantage, every positive advantage that has been acquired by a proprietor, in carrying on his business, whether connected with the premises in which the business is conducted, or with the name under which it is managed, or with any other matter carrying with it the benefit of the business."

In the 39th Federal Reporter. at page 492, the case of Southern White Lead Co. v. Cce et al, is found, decided by the circuit court of the Northern District of Illinois, in 1898:

"A manufacturer of white lead in Chicago will be enjoined from the use of the words 'White Lead, St. Louis' except as to preparations of white lead manufactured there, such use tending to deceive and defraud the public and complainant, a manufacturer of lead in St. Louis."

The court reversed the case, previously decided and reported in another volume of the Federal Reporter, using in its opinion, this language:

"The principle involved is that the defendant's white lead purports to be man ufactured in St. Louis. when in fact it is manufactured in Chicago, and thereby tends to deceive and defraud the public and the complainant, who is a manufacturer of white lead in St. Louis, in as much as the defendant's lead is not pure, and is not made in St. Louis."

Cooley on Torts, on page 427, says:

—"Nor can the name of a place be appropriated as a trade-mark as against others who may see fit to engage in the same business at the same place, though it may be as against one who, at a different place, undertakes to appropriate it."

In the 83 Federal Reporter, at page 213, is a case decided by the circuit court of the Western Division of Michigan, October 27, 1897. It holds: "One making corset waists at Chicago, and selling them as 'Chicago Waists', so that this designation has come to denote among purchasers the goods made by him, is entitled to an injunction against another who makes similar waists in a different state and city, and sells them as 'Chicago Waists' with the manifest intent of availing himself of the reputation acquired by the other 's goods."

This seem to be clearly in point, and is a much later case than the one referred to by the writer in the 26 Encyclopedia of Law. There is a case in the 7 Southern Reporter, a Florida case, page 24, in the same line. There is also a case decided in Ohio, found reported in 33 W. L. Bulletin, 261; — Fed Rep., —, the Genesee Salt Company v. Burnap et al., Partners. This case was decided in 1896 and by the circuit court of appeals, Sixth Circuit, and holds:—"Words merely descriptive of the character, quality and composition of the articles or of the place where it is manufactured or produced cannot be monopolized as a trade-mark."

2. A person who is shown to be palming off his manufactured goods as those of another, may be enjoined, even when he commits the fraud by the use of names which are not the subject of trade-mark property."

3. A manufacturer of salt in the Genesee Valley will not be enjoined from us ing the word 'Genesee' in connection therewith, but he will be restrained from using it in any color, style or form of letters, or in combination with other words, so as to imitate a combination previously used by another maker of salt in the same locality."

Applying this rule to the name used in the case at bar, while the defendants would not be enjoined from using the word "Fairfield," if they lived in Fairfield or if they manufactured plows in Fairfield, still they might be enjoined from using the word "Fairfield" in connection with any other words having a tendency to deceive the public into the idea that plows manufactured by him were those of the complainant.

The court say in the case of Genessee Salt Co. Burnap, already quoted:—A person who is shown to be palming off his manufactured goods as those of another, may be enjoined even when he commits the fraud by the use of means which are not the subject of trade-mark property.

There is a case cited by counsel for plaintiff in the 17 American Reports which goes rather to the expresion of the rule that a mere description of the quality of the goods is not a subject of trademark, and consequently such a decsription cannot be protected. This was the case of Caswell v. Davis,, page 233, of the 17 American Reports.

"A medicine was prepared, consisting of iron, phosphorous and elixir of calisaya bark, which, was named, 'Ferro Phos phorated Elixir of Calisaya Bark.' Held, that the name could not be protected as a trade-mark."

This is in line with numerous authorities, but I think it is not quite pertinent to the discusion of the question as to the use of a geographical name. There is one matter which was discussed in the case especially, that has occurred to me, and that is, that the complaint here is that the defendant is using the same phrase used by the plaintiff, or one of the same phrases I should say, "New Fairfield Plow". Here is not simply the use of a geographical name, but it is the combination of words precisely as used, as it is said by the plaintiff, in one of two designations used by the plaintiff to mark his goods and to identify them to the public; so that the question might still remain as to whether the defendant would be entitled to use the name adopted,—"New Fairfield Plow," even if he or the defendants were entitled to use the name "Fairfield;" whether he could use the same phrase, or same combination of words as used by the plaintiff. The plaintiff says he does use that phrase, and the use of it by the defendants might be calculated to deceive people where the word "Fairfield" would not. I feel quite clear that the demurrer should be overruled; that the complainant is entitled to the relief which he seeks in its full scope, if the averment of his petition is true that the defendant is doing the fraudulent acts alleged.

The demurrer will be overruled.

Stewart & Rowley for Plaintiff

G. Ray Craig, Mansfield & Long, of Shelby, for Defendant.